Steven Delgado LIVAR, Appellant,

v.

The STATE of Texas, State.

No. 2–95–302–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 29, 1996.

Rehearing Overruled Oct. 24, 1996.

Tim Curry, Criminal District Attorney, Betty Marshall, Charles M. Mallin, Debra Ann Windsor, Bobbie Villareal, Mitch Poe, Assistant Criminal District Attorneys, Fort Worth, for Appellant.

Danny D. Burns, Fort Worth, for State.

Before CAYCE, C.J., and DAY and LIVINGSTON, JJ.

## OPINION

LIVINGSTON, Justice.

Appellant Steven Delgado Livar was convicted of attempted murder after he pleaded not guilty to a jury. The jury sentenced Livar to six years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Livar appeals, bringing ten points of error challenging the trial court's jurisdiction and the trial court's evidentiary rulings. Because the trial court had jurisdiction over Livar and because the trial court did not abuse its discretion during the trial, we overrule Livar's points of error and affirm the conviction.

Steven Guerrero, Johnny Guerrero, John McEver, and Eric Ruiz went to a party in Fort Worth to play pool. A fight erupted, and McEver tried to stop it. Someone tried to hit McEver, and he fled the house. Steven and McEver ran to a nearby corner with twelve others from the party following them. Another fight started at the corner, and Steven saw Livar stab Ruiz. Steven was also stabbed and he saw that Livar had stabbed him. Livar ran from the scene.

Livar was indicted for the attempted murder and aggravated assault of Steven. He was sixteen when he committed the crimes. The State filed a petition asking the juvenile court to waive its jurisdiction over Livar on these two allegations. The juvenile court waived its jurisdiction on each allegation and transferred the raised conduct to a criminal district court. While that indictment was pending in district court, the State filed another petition to transfer in juvenile court based on Ruiz's murder. The juvenile court did not waive its jurisdiction on this later charge.

## JURISDICTION

In his first point of error, Livar alleges that the trial court lacked jurisdiction over him because the juvenile court reasserted its jurisdiction after Livar was transferred to district court.

At the time Livar committed his crimes, the law provided that:

If the juvenile court retains jurisdiction, the child is not subject to criminal prosecution at any time for any offense alleged in the petition or for any offense within the knowledge of the juvenile court judge as evidenced by anything in the record of the proceedings.[1]

■ Although it is common practice to refer to waiver of jurisdiction as though the child were being declared an adult for criminal proceedings, that is incorrect. A juvenile court waives jurisdiction only with respect to conduct, and a criminal court has jurisdiction to adjudicate only for the same conduct for which the juvenile court transferred jurisdiction. ROBERT O. DAWSON, TEXAS JUVENILE LAW 94 (3d ed. 1992); see Ex parte Allen, 618 S.W.2d 357, 361 (Tex.Crim.App.1981) (op. on reh'g).

In Allen, Allen was charged in juvenile court with attempted capital murder of Carl Wahlstrom. The State concurrently charged him with the capital murder of Eric Siegfried. The murder of Siegfried occurred three days after the attempted murder of Wahlstrom. The State filed two separate petitions seeking the transfer of the two incidents. The only evidence adduced at the certification hearing was evidence of the attempted capital murder of Wahlstrom. The juvenile court transferred Allen to criminal court based on that evidence. Allen was later convicted of the capital murder of Siegfried in the criminal court, but the Court of Criminal Appeals reversed the conviction because Allen had not been transferred for the conduct underlying the capital murder. He was only transferred on the separate attempted capital murder. Allen, 618 S.W.2d at 358, 361.

Allen only deals with the underlying conduct for which a child is transferred to criminal court. Allen does not restrict the criminal court to the particular offense label that

---

1. Act of June 16, 1973, 63rd Leg., R.S., ch. 544, § 54.02(g), 1973 Tex. Gen. Laws 1460, 1477, amended by Act of May 31, 1995, 74th Leg., R.S., ch. 262, § 34(g), 1995 Tex. Gen. Laws 2517, 2533 (current version at TEX. FAMILY CODE ANN. § 54.02(g) (Vernon 1996)).

the juvenile court may have placed on that conduct. *Wooldridge v. State,* 653 S.W.2d 811, 813–14 (Tex.Crim.App.1983); *Tatum v. State,* 534 S.W.2d 678, 680 (Tex.Crim.App. 1976); *see Brosky v. State,* 915 S.W.2d 120, 126 (Tex.App.—Fort Worth 1996, pet. ref'd). Thus, the State may charge in a criminal court any offense that can be proven if it is based on conduct for which the juvenile court has ordered the juvenile transferred. *Brosky,* 915 S.W.2d at 126.

■ In this case, the juvenile court heard evidence at the certification hearing relating to the assault on Steven *and* the murder of Ruiz. All of the offenses arose out of the same course of conduct on the same day and at the same time. Thus, when the juvenile court waived jurisdiction over the offenses against Steven, it also waived jurisdiction on all of Livar's conduct arising out of the same conduct that it heard evidence on, including the murder of Ruiz. When the juvenile court refused to certify Livar on the Ruiz murder, it impermissibly attempted to divide jurisdiction between the juvenile court and the criminal court, which is prohibited. *See Richardson v. State,* 770 S.W.2d 797, 799 (Tex.Crim. App.1989).

■ Our question then becomes what is Livar's remedy for the juvenile court's second order retaining jurisdiction over the Ruiz murder. A defective order waiving jurisdiction deprives a criminal court of jurisdiction. *In re R.A.G.,* 866 S.W.2d 199, 199 (Tex.1993); *Mason v. State,* 778 S.W.2d 487, 488 (Tex. App.—Houston [14th Dist.] 1989, no pet.). But, the juvenile court in this case did not issue a defective transfer order waiving jurisdiction on the charges relating to Steven. Livar does not challenge the propriety of that initial transfer order. Livar complains only that once the juvenile court "retained" the charges relating to the Ruiz murder, it invalidated the *prior* transfer and conviction on the charges relating to Steven. However, once the juvenile court waived jurisdiction over Livar's conduct, which included the Ruiz murder, the juvenile court had no jurisdiction over any charges arising from that conduct of which the juvenile court was aware when the transfer order was entered. As we pointed out above, the juvenile court heard evidence

and was aware of the connection between Livar and Ruiz's murder at the initial certification hearing. Therefore, the juvenile court's attempt to keep jurisdiction over the Ruiz murder *after* it had transferred that conduct to the criminal court is void. The criminal court's jurisdiction over the attacks on Steven was not affected by the juvenile court's subsequent void order. We overrule Livar's first point of error.

## EVIDENTIARY RULINGS BY THE TRIAL COURT

In his second and third points of error, Livar alleges that the trial court erred in overruling Livar's objections to the State's improper argument during voir dire. Livar points to the following argument by the State:

> [STATE]: Okay. Now, I'm going to jump to aggravated assault with a deadly weapon.
>
> Now, aggravated assault with a deadly weapon could be the scenario that I just talked to you with Mr. Poe [illustrating aggravated assault]. I have Clorox in my hand. I'll try to make it simpler.
>
> Let's say what if I have—I'm from El Paso, Texas, okay? And I love where I'm from, but we grew up in El Paso, Texas, with knives, okay? That's just one of the things that I grew up with and around. My father was a hunter, he had a knife, and we got little bitty Swiss Army knives when we were little. Later on, when we became a teenager, it became real neat to have switchblades or stilettos.
>
> [DEFENSE ATTORNEY]: Your Honor, I object to whatever criminal activity the State may have engaged in. It's improper, outside the record. She's testifying, Your Honor.
>
> . . . .

[The following occurred at the bench.]

> Your Honor, I would point out to the Court my vehement objection of [the State's argument]. El Paso is Chicano oriented, just like my client is Chicano oriented. And her testimony basically is to what Chicanos do and how they live by the knife and die by the knife. It's highly

improper, Your Honor, and she's testifying at this point and attempting to prejudice the jury. We not only move, Your Honor, our objection, but we move for a mistrial.

THE COURT: Where is this going?

[STATE]: I was going to ask a question about stabbing, knives, and I just thought of that example.

THE COURT: Your objection is overruled. Just get to the question.

. . . .

[The following occurred in open court.]

[STATE]: Let's say I'm not so proficient with a knife, okay? And I get upset and I try to stab somebody. I cut them and they—to cut them, just to cause bodily injury, and I have a knife. What offense, [veniremember], would that be?

Based on this argument by the State, Livar says that he "stood trial, not as a human being or an individual, but as a racial stereotypical knife carrying, knife fighting Mexican barrio boy."

■ The trial court has broad discretion to determine the propriety of the questioning during voir dire. *See, e.g., Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App.1988). A permissible form of questioning during voir dire is to explain legal concepts by using hypothetical situations. *See, e.g., Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex.Crim.App. 1995); *Clark v. State,* 881 S.W.2d 682, 689 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995). It is clear from the above-quoted language that the State was merely trying to use examples to illustrate legal concepts that the jury would be using during deliberations. The trial court did not abuse its discretion in overruling Livar's objections. We overrule points two and three.

In his fourth and fifth points of error, Livar argues that the trial court erred in not granting a mistrial after the State asked a defense witness about his gang membership. Livar states that this penalized him for exercising his constitutional right of association.

The following occurred during the State's questioning of Richard Cedillo, one of Livar's witnesses:

Q. You say you only hang around these people [three of Cedillo's friends] about three times a year; is that right?

A. Yes.

Q. Aren't y'all a member of the Bud Clubs together?

[DEFENSE COUNSEL]: Objection, Your Honor. Clearly improper under rules 401, 403, 404.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Have instruction to jury to disregard.

THE COURT: The jury will disregard the last question of the prosecutor.

[DEFENSE COUNSEL]: Move for mistrial, Your Honor.

THE COURT: Denied.

[DEFENSE COUNSEL]: Note our exception.

■ A complaint on appeal must comport with the complaint made in the trial court, or the error is waived. *Butler v. State,* 872 S.W.2d 227, 236 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). In the trial court, Livar did not object to the State's argument on the basis that it violated his rights of association; thus, he has waived any possible error under this point. We overrule points four and five.

Livar argues in points of error six, seven, and eight that the trial court erred in overruling his objections and denying his motion for mistrial regarding the State's attempts to get Ruiz's murder before the jury. Livar states that this evidence violated TEX.R.CRIM. EVID. 401, 403, and 404. In point of error nine, Livar argues that the trial court should have granted a mistrial after these references to Ruiz's murder because the trial court had no jurisdiction over that murder. In his tenth point of error, Livar alleges that the trial court erred in denying his motion for mistrial after these violations occurred because they violated the trial court's motion in limine.

■ Although Livar did raise these specific objections to the trial court, he did not get a "running objection" or object every time

the State admitted evidence of Ruiz's murder. In fact, after one of Livar's objections to the Ruiz evidence was overruled, the State's witness stated three more times that Livar stabbed Ruiz before Livar objected again. Thus, Livar's complaints to this evidence are waived. *See Etheridge v. State*, 903 S.W.2d 1, 14 (Tex.Crim.App.1994), *cert. denied,* ― U.S. ―, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995); *Willis v. State*, 785 S.W.2d 378, 383 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). We overrule Livar's remaining points of error.

## CONCLUSION

Having overruled all of Livar's points of error, we affirm the judgment of the trial court.