NO. 07-02-0264-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 4, 2003
_____

FREDDY DOMINGUEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-437,238; HON. CECIL PURYEAR, PRESIDING
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Appellant Freddy Dominguez appeals his conviction for aggravated assault with a deadly weapon. Through four issues, he claims that 1) the evidence was insufficient "to support the jury verdict of 'true' to the enhancement count when the Indictment alleged the date of the conviction as April 5th, 1994 when the actual date of revocation was April 4th, 1994," 2) the trial court "abused its discretion when it denied [his] Motion to Testify Free from Impeachment by a prior conviction," 3) the trial court erred in determining that evading arrest was not a crime of moral turpitude, and 4) the evidence was factually insufficient to support the conviction. We affirm the judgment of the trial court.

***Issue One — Variance Between Date of Final Conviction***
***as Alleged in Indictment and Proved at Trial***

The first issue concerns the State's attempt to enhance appellant's punishment through proof of a prior conviction. The State alleged in the indictment that the conviction became final on April 5, 1994, while the evidence illustrated that it actually became final a day earlier. And, because of this variance between the allegation and ensuing proof, no evidence purportedly illustrated that appellant was finally convicted as alleged in the indictment. We overrule the issue.

Variances such as that in question are not fatal unless it misleads the appellant to his prejudice. *Freda v. State*, 704 S.W.2d 41, 42-43 (Tex. Crim. App. 1986); *Thompson v. State*, 563 S.W.2d 247, 251 (Tex. Crim. App. 1978). Here, appellant neither contends nor illustrates that he was misled to his prejudice in any way by the variance. Thus, it was, and is, not fatal.

***Issue Two - Denial of Motion to Testify Free From Impeachment***

Via his second issue, appellant complains the trial court erred in rebuffing his attempt, via pretrial motion, to prevent the State from asking him about a prior felony theft conviction. Furthermore, his effort was based upon Texas Rule of Evidence 403, *i.e.* the probative value of the evidence was substantially outweighed by its prejudicial effect. We overrule the issue for several reasons.

First, the sum and substance of appellant's argument consists of no more than quoting passages from the record and generally mentioning a case that described indicia which may be considered in assessing issues implicating Rule 403. He provides us with no explanation as to how those indicia should be applied at bar. Nor does he attempt to

2

explain why the court's decision was error. Instead, he merely "urges this Court to find that the trial court abused its discretion . . . ." That does not constitute adequate briefing, as required by Texas Rule of Appellate Procedure 38.1(h). *Billy v. State,* 77 S.W.3d 427, 429 (Tex. App.—Dallas 2002, pet. ref'd) (holding that the appellant must not only cite to the record and pertinent legal authority but also include substantive analysis within his argument).

Second, at the time the motion was argued, appellant informed the court that he "would stipulate that it would be agreeable to say that he has a prior felony conviction, but [he] just [does not] see a theft conviction getting in front of the jury, [in] an aggravated assault with a deadly weapon case . . . ." In other words, he had no problem with the State simply mentioning that he had been previously convicted of a prior felony. His concern involved allusion to the particular offense, *i.e.* theft. Moreover, in questioning appellant, the State asked whether he was previously convicted of a felony resulting in his incarceration; it did not mention or ask about the particular offense underlying the felony. Thus, it did no more than what appellant, at trial, agreed it could do. At the very least, the objection at trial fails to comport with the complaint now urged on appeal which results in the waiver of the complaint. *Livar v. State,* 929 S.W.2d 573, 576 (Tex. App.—Fort Worth 1996, pet. ref'd).

### *Issue Three - Evading Arrest a Crime of Moral Turpitude*

In his third issue, appellant complains of the trial court's refusal to permit him to impeach a witness via allusion to the witness's prior conviction for evading arrest. He believed himself entitled to so impeach the witness because evading arrest purportedly constitutes a crime of moral turpitude, and one can impeach a witness, under Texas Rule

of Evidence 609, by illustrating that he has been convicted of a crime of moral turpitude. Finding it somewhat ironic that appellant now wants to do that which he previously argued should not be done (*i.e.* impeach one through reference to a prior conviction for a particular crime), we nonetheless overrule the issue.

A crime of moral turpitude is one involving 1) grave infringement of the moral sentiment of the community, 2) conduct that is base, vile, or depraved, and 3) something inherently immoral and dishonest. *Arnold v. State,* 36 S.W.3d 542, 546 (Tex. App.—Tyler 2000, pet. ref'd). Appellant cites no Texas cases, and we have found none, holding that evading arrest is a crime of moral turpitude.

Furthermore, a person commits the offense of evading arrest if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. TEX. PEN. CODE ANN. §38.04(a) (Vernon Supp. 2003). Fleeing a police officer, though improper, does not necessarily involve moral depravity or dishonesty, as do crimes like theft, swindling, making a false report, or assault upon a woman by a man (which crimes have been held as involving moral turpitude). *See e.g. Bensaw v. State,* 129 Tex. Crim. 474, 88 S.W.2d 495 (1935) (involving theft); *Sherman v. State*, 124 Tex. Crim. 273, 62 S.W.2d 146, 150 (1933) (involving swindling); *Lape v. State*, 893 S.W.2d 949, 958 (Tex. Civ. App.—Houston [14th Dist.] 1994, pet. ref'd) (involving a false report); *Hardeman v. State*, 868 S.W.2d 404, 407 (Tex. App.—Austin 1993, pet. dism'd) (involving assault by a man upon a woman). Nor do we view it as striking at the moral sentiment of the community. It is wrong, but it does not evince a morally bad person having a defective character. Thus,

4

the crime is not one of moral turpitude, and the trial court did not abuse its discretion in refusing to allow appellant to use the conviction to impeach the witness.

### Issue Four - Factual Sufficiency of the Evidence

In his final issue, appellant contends the evidence is factually insufficient to support the verdict. We overrule the issue.

The standard by which we review factual sufficiency challenges is well established and we need not reiterate it. Instead, we cite the parties to *Zuliani v. State*, No. 1168-01, 2003 Tex. Crim. App. LEXIS 26 (Tex. Crim. App. February 5, 2003) and *King v. State,* 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for its explanation.

Next, appellant was found guilty of aggravated assault by intentionally, knowingly, or recklessly causing bodily injury to Ruben Valdez by striking Valdez with a board that was a deadly weapon in that the manner of use and intended use was capable of causing death or serious bodily injury. *See* TEX. PEN. CODE ANN. §22.02(a) (Vernon 1994).

Next, the record contains the following evidence. Appellant had been hired by Valdez, who worked for Larry Denson, the owner of a roofing company, to tear off old roof shingles. While appellant was working, part of the roof caved in because too many shingles had been piled on top of it. Denson had also received a complaint that the roofers were drinking on the job. Thus, Valdez was told to fire appellant, which he did. Thereafter, appellant left a message on Denson's phone not only identifying himself but also stating that he was "going to get" Valdez.

Later, a young man came to the door of Valdez' home and asked if he could get help with his car, which car contained appellant and another individual. Upon approaching

5

the car, Valdez was hit by a board wielded by one of the men. Valdez was then able to get to his vehicle and retrieve a pry bar from it. One of the men then ran away after dropping the board. At that point, Valdez retrieved the board and advanced upon the other man. Appellant then exited the car and stated he was going to kill Valdez. Although Valdez was able to initially hit appellant with the board, the other man intervened and Valdez himself was ultimately beaten by the assailants with the board. Valdez received a laceration on his scalp that required nine staples and sustained multiple broken fingers as well as bruises. Valdez subsequently identified appellant as one of the assailants, though he initially referred to appellant as Freddy Martinez (rather than Dominguez). This evidence permits a rational jury to conclude, beyond reasonable doubt, that appellant was either the primary assailant or a party to the assault as alleged in the indictment.[1]

While questions arose as to whether the board admitted as an exhibit at trial was the one used to strike Valdez, as to Valdez' mischaracterization of appellant's last name, and as to appellant's claim of self-defense, the evidence was nonetheless sufficient to warrant conviction.[2] It was for the jury to credit those witnesses and that evidence which it chose to credit. Furthermore, the testimony of Valdez was not inherently unbelievable or that of appellant indisputable. The jury could have believed either and their respective versions of what occurred.

In short, the evidence of guilt is not so weak as to render the verdict clearly wrong or manifestly unjust. Nor is the finding of guilt so contrary to the great weight and

---

[1]At trial, the court included a party charge in its instructions to the jury.

[2]Appellant testified at trial that he went to Valdez' home alone, knocked on the front door, and was beaten by Valdez with a board. He asserted that any injuries received by Valdez were the result of the need to defend himself against Valdez.

6

preponderance of the evidence as to be clearly wrong.  So, the evidence is factually sufficient to support the verdict.

The judgment of the trial court is affirmed.

Brian Quinn
Justice

Do not publish.